**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2114-24

ANDREW KASBARIAN,

     Plaintiff-Appellant,

v.

PARENE REALTY CO., LLC,
also known as PARENE REALTY
CO., LLC, c/o ACME, ACME
MARKETS INC., ALBERTSONS
COMPANIES, GREEN MEADOWS
LANDSCAPING, and GREEN
MEADOWS, INC.,

     Defendants-Respondents.

_____

Submitted January 13, 2026 – Decided February 3, 2026

Before Judges Chase and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4112-21.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, on the brief).

Reilly, McDevitt & Henrich, PC, attorneys for respondents Albertsons Companies, Inc. and Parene

Realty Co., LLC (Tracey McDevitt Hagan, on the brief).

Haworth Barber & Gerstman LLC, attorneys for respondents Green Meadows Landscaping and Green Meadows, Inc. (John J. Megjugorac, on the brief).

PER CURIAM

In this slip-and-fall negligence action, plaintiff Andrew Kasbarian appeals from the Law Division orders granting summary judgment to defendants Parene Realty Co., LLC ("Parene"), Albertsons Companies[1] ("Albertsons"), and Green Meadows Landscaping, LLC ("Green Meadows"). Having considered the parties' arguments, the record, and governing legal principles, we affirm.

I.

We set forth the following facts viewing all evidence and inferences in favor of plaintiff as required by Rule 4:46-2(c). On November 9, 2019, at 7:06 a.m., plaintiff fell on black ice in the parking lot while entering Acme Supermarket, his workplace, located in Fort Lee. Plaintiff asserts that the parking lot was improperly maintained and inspected. He claims Acme, the property owner, and the landscaping contractor failed to detect and remedy the black ice, which created a hazardous condition for business invitees.

---

[1] Improperly plead as the company is "New Albertsons."

2

After the fall, plaintiff and an assistant manager discovered that the sprinklers had triggered earlier, resulting in the black ice formation. Plaintiff did not observe the ice before his fall. He also denied seeing water actively coming from the sprinkler at the time of the accident. He suffered a severe left shoulder injury, which required surgery in February 2020.

Parene owned the premises and leased them to Acme under a 1994 lease. That agreement assigned Acme responsibility for all repairs and property maintenance. Three hours after the incident, Albertsons, Acme's parent company, submitted a work order to Green Meadows to winterize the sprinkler system. The system was subsequently winterized.

Since 2017, Green Meadows had provided landscaping and irrigation services, including winterization, as requested by Albertsons. Their contract did not require them to proactively winterize the sprinklers; they performed shutdowns only upon Albertsons' request from the Facilities and Energy Department. Green Meadows would not winterize the sprinklers themselves; they would do so through a service provider.

Plaintiff filed suit in October 2021, alleging negligent maintenance, breach of implied warranty, failure to remove a dangerous condition, and failure to warn.

A-2114-24

Initially, the trial court denied summary judgment to both Parene and Albertsons, finding that factual questions remained about each entity's involvement with the site and maintenance. Later, plaintiff amended his complaint to add Green Meadows. All three defendants renewed or filed motions for summary judgment, and the court granted them, dismissing all claims.

The court granted summary judgment in favor of Albertsons due to a lack of constructive notice regarding black ice or any defect in the sprinkler system. The court also determined that, "the Ohio corporation does not have a duty to ensure that its contractor does everything right or wrong."

The court granted summary judgment in favor of Parene, ruling that it was not responsible for the plaintiff's fall in the parking lot, as the lease agreement assigned responsibility to the tenant. Moreover, the court determined that there was no actual or constructive notice of the black ice that caused the fall, and Parene was not involved in the operation or maintenance of the parking lot.

The court then granted summary judgment for Green Meadows noting that there was a contract for landscaping work, but Green Meadows was not contracted to perform a sprinkler system shut down until three hours after the plaintiff's fall, and Green Meadows did not install or maintain the system. The

4

court said the contract did not require proactive winterization, and imposing such a duty would be unreasonable.

This appeal follows.

## II.

We review a summary judgment determination de novo, "applying the same standard as the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 655 (2022). Under this standard, summary judgment will be granted when "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"'The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages.'" Coleman v. Martinez, 247 N.J. 319, 337 (2021) (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)). See also Townsend v. Pierre, 221 N.J. 36, 51 (2015). "It is the obligation of the plaintiff to prove each element." Coleman, 247 N.J. at 337 (citing Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)).

A-2114-24

Landlords owe a duty to persons lawfully on property only for areas over which they retain control. See J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 218 (2019). If a lease unambiguously assigns the landlord's responsibilities to the tenant, the landlord may avoid premises liability. Shields v. Ramslee Motors, 240 N.J. 479, 488-89 (2020).

If the element of control does not make clear which party owes a duty, the duty analysis instead turns on whether the imposition of a duty "satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). To determine if a duty satisfies a basic sense of fairness, courts consider the Hopkins factors, being: "[1] the relationship of the parties, [2] the nature of the attendant risk, [3] the opportunity and ability to exercise care, and [4] the public interest in the proposed solution." Underhill v. Borough of Caldwell, 463 N.J. Super. 548, 556 (App. Div. 2020) (quoting Hopkins, 132 N.J. at 439).

Moreover, "[o]wners of premises are generally not liable for injuries caused by defects of which they had no actual or constructive notice and no reasonable opportunity to discover." Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 601-02 (App. Div. 2016). The absence

of actual or constructive notice of a dangerous condition is generally "fatal to [a] plaintiff's claim of premises liability." Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013). We have also held "[t]he mere [e]xistence of an alleged dangerous condition is not constructive notice of it." Ibid. (citation omitted).

A defendant has constructive knowledge of a dangerous condition "when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe, 443 N.J. Super. at 602 (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). "The characteristics of the dangerous condition giving rise to the slip and fall" or eyewitness testimony regarding the length of time the conditions existed "may support an inference of constructive notice about the dangerous condition." Ibid.

It is well-settled that whether a legal duty exists within any given set of facts is a question of law. Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991). Under New Jersey law, questions of law are matters to be decided by the court, not the trier of fact. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, (1996); Kelly v. Gwinnell, 96 N.J. 538, 552 (1984).

A-2114-24

III.

On appeal, plaintiff asserts the court erred in granting summary judgment for all three defendants. He contends at least one of them—the contractor Green Meadows, the lessee Albertsons, or the property owner/landlord Parene—had a duty to shut down and winterize the sprinkler system and is liable for the plaintiff's fall caused by the black ice. We address each defendant's liability in turn.

We begin with plaintiff's contention that the court erred in granting summary judgment to Green Meadows because they were a property manager and thus responsible for maintaining safe premises, which included ensuring that no hazardous conditions, such as non-winterized sprinklers, existed on the premises. We disagree.

The Hopkins factors weigh in favor of Green Meadows having no duty to plaintiff. First, plaintiff's relationship with Green Meadows is not the type of relationship intended to confer a duty. Hopkins, 132 N.J. at 439. The types of relationships that are traditionally considered to have met the first factor of the Hopkins test include fiduciary relationships, contractual relationships, and business owner — invitee relationships. See Holm v. Purdy, 252 N.J. 384, 407-08 (2022); Raimo v. Fischer, 372 N.J. Super. 448, 457 (App. Div. 2004); Nielsen

v. Wal-Mart Store #2171, 429 N.J. Super. 251, 261-62 (App. Div. 2013). Green Meadows owed no duty to plaintiff because it did not control the premises nor was it contractually obligated to winterize the sprinkler system, absent a specific request, which did not occur until after the accident. Its mere role as a service provider, without constant site presence or notice, and with only ad hoc responsibility as directed, is insufficient to impose a duty owed to business invitees like plaintiff.

The second Hopkins factor, "the nature of the attendant risk" also does not support a finding for plaintiff. Hopkins, 132 N.J. at 439. This factor focuses on "whether the risk is foreseeable, whether it can be readily defined, and whether it is fair to place the burden on preventing the harm upon the defendant." Shields v. Ramslee Motors, 240 N.J. 479, 493 (2020). In Shields, the Court noted that it would "not be fair to place responsibility for removal of snow and ice" on a party that lacks control over the respective property. Ibid. Green Meadows lacked control over the property and Acme, who had control over the property, was responsible for maintaining safe premises in freezing conditions rather than its service provider, Green Meadows.

The third factor, "the opportunity and ability to exercise care" also weighs in favor of not extending a duty to Green Meadows. Hopkins, 132 N.J. at 439.

9

Typically, a party has an opportunity and ability to exercise care when they either maintain control of a property, or they see a dangerous condition and have the opportunity to warn others of this condition. See Underhilll, 463 N.J. Super. at 557 and Shields, 240 N.J. at 493 (finding that a landlord was not responsible for preventing temporary slippery conditions caused by weather because he did not maintain control of the premises or a presence on the property, thus, he did not meet the Hopkins third factor). Similar to Underhill and Shields, since Green Meadows did not have control of the premises and did not maintain a presence on the property, it should not be held responsible for ensuring that black ice was not on the premises. Ibid. Moreover, Green Meadows did not have an opportunity to exercise due care. The work order requesting that Green Meadows shut down the sprinkler system was generated three hours after plaintiff's accident occurred.

The final factor, "the public interest in the proposed solution," also supports Green Meadows not having a duty to plaintiff. Hopkins, 132 N.J. at 439. Although it is true that invitees may have less dangerous conditions on properties if landscapers tracked the weather and winterized each property in accordance with the weather, this would be an extraordinary burden for the courts to place on landscapers. Thus, the public interest in the proposed solution

10

of having landscapers winterize all properties before freezing conditions can occur does not outweigh the practicable burden that it would create to rule all landscapers must do this, especially when their contract is specific that it is not their responsibility.

Further, Green Meadows had neither actual nor constructive notice of the black ice and therefore, cannot be held to have a duty to plaintiff. Arroyo, 433 N.J. Super. at 243. Constructive notice is dependent on the circumstances of each case, and the circumstances here show that Albertsons did not have constructive notice. Jeter v. Sam's Club, 250 N.J. 240, 251-52 (2022). The ice was a temporary condition that developed overnight before the store opened and even plaintiff himself, one of the first employees on the premises, did not notice the ice. Accordingly, summary judgment for Green Meadows was proper.

We now turn to plaintiff's claim the court erred in granting summary judgment to Albertsons. Plaintiff asserts that Albertsons should be vicariously liable: either because Green Meadows was its agent under respondeat superior,[2] or because, as Acme's parent company, it exercised control over the property. We are not persuaded by either argument.

---

[2] Under respondeat superior, a principal is liable for the tortious acts of an agent committed within the scope of employment. Levin v. Lynn, 310 N.J. Super. 177, 185 (App. Div. 1998).

A-2114-24

First Green Meadows was not liable, and therefore under respondeat superior Albertsons cannot be liable. Second, respondeat superior does not apply to an independent contractor unless exceptions exist, none of which are present here. See Bahrle v. Exxon Corp., 145 N.J. 144, 156 (1996) ("Ordinarily, an employer that hires an independent contractor is not liable for the negligent acts of the contractor in the performance of the contract.").

Moreover, our law is clear that, "even in the case of a parent company and its wholly-owned subsidiary," liability will not be imposed on the parent company for the subsidiary's torts. N.J. Dep't of Env't Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983) (citing Mueller v. Seaboard Com. Corp., 5 N.J. 28, 34 (1950)). Only where a parent company utilizes its subsidiary as a "mere agency or instrumentality" of themselves will a parent company be held liable for its subsidiary's negligence. OTR Assoc. v. IBC Serv., Inc., 353 N.J. Super. 48, 51 (App. Div. 2002). For the corporate veil to be pierced, plaintiff needed to show that Albertsons dominated Acme to the point that Albertsons "had no separate existence but was merely a conduit for the parent." Ventron Corp., 94 N.J. at 501. Plaintiff failed to provide such evidence. The post-accident repair request[3]

---

[3] This evidence would have been inadmissible at trial to prove negligence under N.J.R.E. 407 as a subsequent remedial measure.

and the Green Meadows contract are insufficient to demonstrate such control, especially since testimony established that Albertsons did not manage Acme's operations.

Albertsons also had no actual or constructive notice of the black ice as they are based in Idaho, thus, it would have been impossible for it to have notice of the icy conditions that developed suddenly.

Lastly, we address plaintiff's contention that the court erred in granting Parene summary judgment. Plaintiff claims that despite the parties' contract, Parene is obligated to exercise reasonable care to ensure the safety of an invitee, including ensuring that hazardous conditions are warned of or corrected. We are not swayed.

Landlords are not liable for personal injuries sustained by an employee when a lease unambiguously places liability on the tenant. McBride v. Port Authority of New York and New Jersey, 295 N.J. Super. 521, 526-27 (App. Div. 1996). Parene delegated all maintenance obligations to its tenant Acme under a comprehensive net lease. Parene's certification that it did not hire contractors, conduct inspections or receive reports of defects affirms this arrangement. The lots shared use among tenants doesn't override the agreement's explicit

13

assignment to Acme as primary maintainer of common areas. As such, they had no duty to plaintiff.

Even if Parene was liable for this property, owners are "generally not liable for injuries caused by defects of which they had no actual or constructive notice and no reasonable opportunity to discover." Troupe, 443 N.J. Super. at 601-02. Parene did not have actual notice because they were not on the premises and did not have direct knowledge of the presence of the temporary black ice on the property. Furthermore, Parene was not a party to the contract between Albertsons and Green Meadows to ensure that the sprinkler would be winterized in a timely manner and therefore it would be unreasonable to expect Parene to have entered the premises in the middle of the night to see if there was black ice.

To the extent we have not specifically addressed any of plaintiff's arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

14                                                    A-2114-24